IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| FRANK KEEHNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-3114-CV-S-NKL-SSA |
| | ) | |
| MICHAEL ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER**

Before the Court is Plaintiff Frank Keehner's Social Security Complaint [Doc. # 3]. For the following reasons, the Court reverses the decision of the Administrative Law Judge ("ALJ") and directs the Commission to award benefits.

**I.  Background[1]**

This suit involves Keehner's application for disability insurance benefits under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401, et seq. On September 24, 2009, following a hearing, an ALJ found that Plaintiff was not under a "disability" as defined in the Act. Plaintiff Keehner appeals from that decision.

---

[1] The facts and arguments presented in the parties' briefs are duplicated here only to the extent necessary. Portions of the parties' briefs are adopted without quotation designated.

### A. Medical Evidence

Plaintiff Keehner underwent back surgery in 2004, a solid fusion from the L4 to the sacrum, performed by Dr. Paul M. Olive. At least since June 13, 2006, Keehner has reported continued lower back pain from the surgery.

Plaintiff visited Scott Swango, M.D., twice in 2005 regarding carpal tunnel syndrome in his wrists. Dr. Swango performed a carpal tunnel release on Plaintiff's right wrist in September 2005, and a similar procedure on Plaintiff's left wrist in November 2005.

On June 13, 2006, Plaintiff Keehner saw his primary care physician, Dr. Doyle Hill, D.O., and received a prescription for Lortab to aid in managing his lower back pain. Keehner continued to visit Dr. Hill's office on a monthly basis for his lower back pain, as well as being treated for hyperlipidemia, diabetes mellitus, and hypertension. He complained of decreased range of motion, myotension, spasms, and lower back pain. In March and April of 2007, he reported weakness in his left leg and shooting pains down his left leg from his lower back. On March 21, 2007, Dr. Hill prescribed Keehner the anti-depressant Sertraline (Zoloft).

In May 2007, x-rays identified "very minimal thoracic degenerative disk disease" in Plaintiff's spine. [Tr. 200.] Alicia Baker, Dr. Hill's physician assistant, prescribed pain medication at each visit. On July 9, 2007, Plaintiff Keehner reported that his pain was a 10 on a 1-10 scale without medication. With medication, the pain was still an 8 of 10 in the morning, improving to 4 or 5 of 10 in the afternoon.

On August 3, 2007, Dr. Olive, Plaintiff's back surgeon, evaluated Plaintiff's back pain. Dr. Olive noted that there was an overabundance of bone graft at one of the fusion sites. Additionally, Dr. Olive observed what he described as a "rather marked limitation of motion in the lumbar spine." [Tr. 246.] Dr. Olive opined that further surgery was not in Plaintiff's best interest. Also during this visit, Dr. Olive completed a Medical Source Statement-Physical, which limited Keehner's lifting to 5 pounds frequently or occasionally, limited his sitting, standing, or walking to less than 15 minutes continually or 1 hour through an 8 hour workday, stated that Keehner would struggle with concentration as a result of his medications, and described a need for Keehner to lie down at least 3 to 4 times daily for 15-20 minutes.

On August 6, 2007, Keehner returned to Dr. Hill's office. He reported that his back pain was now 6 on a 1-10 scale. Further, Keehner reported experiencing vertigo. At this visit, Dr. Hill, Keehner's primary care physician, filled out a Medical Source Statement-Physical describing Keehner's limitations. He opined that Keehner was unable to lift more than 5 pounds, either frequently or occasionally; was unable to sit, stand, or walk more than 15 minutes continuously and no more than 1 hour throughout an 8 hour day; was limited in pushing or pulling; should never climb, balance, stoop, kneel, crouch or crawl; should only occasionally reach; should avoid moderate exposure to weather, wetness, dust or fumes, and vibration; that his pain, medication, and the side effects caused a decrease in concentration, persistence, and pace; and that Keehner needed to lie down 4 to 5 times daily for 15-30 minutes. [Tr. 251-52.]

Plaintiff Keehner continued to visit Dr. Hill's office, and his back pain continued to worsen. In October of 2007, Keehner described his pain as 8 out of 10, and as worsening with the onset of cold weather. The next month, Keehner complained of 10 out of 10 pain and requested and received lidocaine epidermal injections bilaterally at the L4 and L5 vertebra. After the injections, in December of 2007, Plaintiff reported 7 out of 10 pain. He further stated that the lidoderm patches were ineffective in providing pain relief and was prescribed 550mg of Anaprox for breakthrough pain. By March 19, 2008, the pain had again returned to an 8 out of 10.

In March 2008, Plaintiff also reported fatigue. With laboratory testing, Dr. Hill and his staff diagnosed testosterone and vitamin B12 deficiencies. Dr. Hill treated those conditions with testosterone and vitamin B12 injections.

In April 2008, a nerve conduction study also diagnosed moderate right median neuropathy in Plaintiff's right wrist, but no motor or sensory abnormalities in his legs. The study suggested that Plaintiff might have mild left L5 radiculopathy. In June 2008, Plaintiff reported depression, and Dr. Hill prescribed an antidepressant. On July 1, 2008, Plaintiff reported that he had fallen on his right elbow due to his vertigo and was experiencing pain of 4-5 on a 10-point scale. X-rays diagnosed mild bursitis and fluid 3 buildup in his right elbow. Plaintiff also reported low back pain, decreased range of motion, muscle tension, and spasms.

On August 6, 2008, Plaintiff Keehner reported having experienced pain of an 8 of 10 intensity in the spine, and received lidocaine injections on the right side of the T10 and T11

vertebra. When Keehner returned five days later reporting no relief from the spinal pain, Dr. Hill's office ordered a CT scan of the thoracic region of the spine. The CT scan occurred on August 14, and showed mild degenerative spondylosis at the T6-T7, T7-T8, and T8-T9 anterior endplates. On August 22, Keehner reported that the pain was so severe that he was not sleeping, and Dr. Hill prescribed him Ambien to aid with rest. On September 17, Keehner reported his back pain as a level 10 of 10.

On November 11, 2008, Keehner reported to a nephrologist, Dr. Guatam Cherla, regarding his hypertension and potential complications from the number of blood pressure medications he was taking. On December 16, 2008, Dr. Hill referred Keehner to a urologist, Dr. David Anderson, regarding his fatigue. Dr. Anderson concurred with Dr. Hill's diagnosis of hypogonadism based on previous testosterone screenings, but sought further testing to appraise the current condition, and altered the course of treatment from testosterone injections to a testosterone gel.

On December 18, 2008, Dr. Swango performed surgery to remove the spur in Plaintiff's right elbow. Two weeks later, Plaintiff demonstrated satisfactory range of motion and normal sensation in his elbow, and voiced no specific complaints. Two weeks later, Plaintiff reported to Dr. Cherla fatigue, heat and cold intolerance and constant, sharp lower back pain at 7 on a 10-point scale.

Keehner continued to visit Dr. Hill's office monthly during 2009, consistently reporting lower back pain. Again on April 8, 2009, the pain became so severe that Keehner requested and received another lidocaine injection bilaterally at the L4 and L5 vertebra. Dr.

5

Hill submitted a statement, dated November 18, 2009, in connection with Keehner's appeal of the ALJ's decision stating that he had been Keehner's primary care physician for the last four years.

### B.     Administrative Hearing

Plaintiff Keehner testified at his administrative hearing on June 8, 2009. Plaintiff last worked on his family dairy farm. He stated that he could not work because he experienced constant low back pain and could not sit straight up for more than a couple of minutes. He also stated that his hands go to sleep, that his blood pressure medications caused him to black out if he stood up suddenly, and that he sometimes experienced difficulties with his mood. He was taking an antidepressant, but did not participate in therapy for his reported mood condition. Plaintiff stated that he had trouble with repetitive movement and gripping with his hands after a carpal tunnel surgery in 2005. Plaintiff testified that he spent most of his day watching television and walking around his farm. He went grocery shopping with his wife, and sat in the car while she shopped. He also stated that he could occasionally pick up household objects and bend until his hands reached his knees, but was not supposed to lift over five to 10 pounds.

A vocational expert testified in response to a hypothetical question posed by the ALJ, based upon Plaintiff's age, education, work experience, and RFC. The vocational expert considered a hypothetical individual could perform a range of sedentary work and occasionally bend, twist, and turn while standing; frequently bend, twist, and turn while sitting; occasionally stoop, squat, and climb stairs; frequently handle, finger, and feel objects;

and only infrequently kneel. The hypothetical individual required the ability to sit or stand at will, elevate his feet up to nine inches while sitting, stand slowly from a crouching or squatting position over a period of 10 seconds, and could not push or pull levers with his legs, crawl, climb ropes or ladders, power grip objects sufficiently to hold a hammer or grasp a lever, use air or vibrating tools, drive a motor vehicle, work at unprotected heights, or work in extreme temperatures. The hypothetical person could make complex work-related decisions occasionally or less, and would have difficulty concentrating. The vocational expert testified that the hypothetical person could perform work as a document preparer, bonder/semiconductor, or lens inserter.

### C. The ALJ's Decision

The ALJ found that Plaintiff had degenerative disc disease, right-sided carpal tunnel syndrome, and hypogonadism, but did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. pt. 404, subpt. P, app.

The ALJ found that Plaintiff retained the RFC to perform a limited range of sedentary work, but needed to sit or stand at will, shift his feet while standing, and raise his feet up to nine inches while sitting. The ALJ determined that Plaintiff retained the RFC to sit 6 hours and stand or walk 2 hours in an 8-hour day. The ALJ also concluded that Plaintiff could frequently bend, twist, and turn while sitting, occasionally bend, twist, and turn while standing, and occasionally climb stairs, but could not climb ladders or ropes, crawl, operate levers with his legs and feet, drive, operate pneumatic or power tools, or work in proximity to extreme temperatures or unprotected heights. The ALJ found that Plaintiff could grip and

7

grasp objects on a frequent basis, but could only power grip for brief periods. The ALJ also found that Plaintiff could make complex decisions occasionally, and had some difficulties staying on task.

The ALJ found that Plaintiff's impairments prevented him from doing his past relevant work as a dairy farmer but would not preclude him from performing other work existing in substantial numbers in the national economy. Consequently, the ALJ found that Plaintiff was not disabled.

## II. Discussion

### A. Standard of Review

In reviewing the Commissioner's denial of benefits, the Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (citation omitted). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choice." *See Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). "An ALJ's decision is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.* (quoting *Nicola*, 480 F.3d at 886).

### B. Plaintiff's Arguments

On this appeal, Plaintiff Keehner argues that the ALJ improperly (1) disregarded the medical opinions of treating sources, (2) disregarded Keehner's testimony, and (3) failed to provide an appropriate residual functional capacity ("RFC").

### 1. Whether the ALJ Improperly Disregarded Medical Opinions of Treating Sources

A treating physician's opinion is generally entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence. *Medhaug v. Astrue*, 578 F.3d 805, 815 (8th Cir. 2009) (citing *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005)). "'An ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" *Id.* (quoting *Goff*, 421 F.3d at 790). When the ALJ does not give the treating source's opinion controlling weight, he considers the following factors in determining the weight to give the opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) "supportability" – i.e., the evidence a medical source presents to support an opinion; (4) the consistency of an opinion with the record as a whole; and (5) whether the doctor is a specialist with respect to the medical issue. 20 C.F.R. § 404.1527(d). If an ALJ discounts a treating physician's opinion, he must give "good reasons" for doing so. *Dolph v. Barnhart*, 308 F.3d 876, 878 (8th Cir. 2002).

Here, a Medical Source Statement-Physical was provided by Keehner's primary care physician, Dr. Doyle Hill. A Medical Source Statement-Physical was also provided by Dr. Paul M. Olive, the orthopedic surgeon who performed Keehner's back fusion and followed-up afterwards for continuing pain. In the ALJ's decision, there is no substantive discussion of the factors listed in 20 C.F.R. § 404.1527(d). Nor was there a discussion of any superior medical evidence, nor specific inconsistencies in the evidence provided by Plaintiff's doctors. Instead, the ALJ discounted the opinions of Dr. Hill and Dr. Olive in a single sentence, without citing evidentiary support: "These opinions are not given controlling weight because they are not supported by exam results, and are inconsistent with the record as a whole." [Tr. 12.] The Court does not consider this single sentence a sufficient basis for discounting the opinions of Plaintiff's treating physician and back surgeon. Nor has the Court found an independent basis for discounting the opinion of these treating physicians. Therefore, the ALJ's decision to discount the restrictions of Plaintiff's treating physicians is not supported by the record as a whole.

### 2. Whether the ALJ Improperly Disregarded Keehner's Testimony

SSR 96-7p requires the ALJ to conduct a two-step test to determine the claimant's credibility regarding his statements related to his symptoms. This two-step test consists of: (1) determining whether there is a medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms, and (2) evaluating the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work.

SSR 96-7p; 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). When analyzing a claimant's subjective complaints of pain, the ALJ should examine factors such as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1321-22 (8th Cir. 1984). When an ALJ determines that the claimant is not credible and decides to reject the claimant's statements, the ALJ must provide specific reasons for his credibility finding. *See Delrosa v. Sullivan*, 922 F.2d 480, 485 (8th Cir. 1991). While the ALJ need not discuss each *Polaski* factor in a methodical fashion, the ALJ must acknowledge that each factor has been considered before discrediting the subjective reports of pain. *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

Here, the ALJ first reasons that Keehner lacks credibility because "he testified that he spends most of his day sitting and watching television. This activity is inconsistent with his assertion of an inability to sit more than a few minutes at a time." [Tr. 13.] However, the only mention of watching television during the hearing did not describe what position he was in while doing so. [Tr. 19.] Keehner testified at the hearing that he is most comfortable "[l]aying or reclined" and has difficulty sitting with his feet flat on the floor in a flat backed chair because it puts "a lot of pressure" on his lower back. [Tr. 32, 21.] In the Function Report-Adult, Keehner explicitly states that he lays on the couch while watching television and that sitting upright for more than five minutes results in "extreme back pain." [Tr. 134,

11

141.] Thus, the Court does not find a sufficient evidentiary basis for the ALJ's first ground for discounting Plaintiff's credibility.

The ALJ also pointed to Keehner's testimony regarding the intensity and frequency of the symptoms as evidence of his lack of credibility. The ALJ noted that Keehner informed his physicians that analgesics afford him some relief from back pain. Despite using hydrocodone, Keehner still reported pains of 6 and 8 out of 10. [Tr. 266.] This is consistent with Keehner's repeated reports of back pain.

The ALJ then goes on to state that Keehner's claims of being unable to walk more than 150 yards are inconsistent with statements in the Function Report-Adult that he "accompanies his wife when she grocery shops and walks around the farm." [Tr. 13 (citing Tr. 129, 131).] The report cited by the ALJ states that Keehner tries to walk ½ to ¾ mile daily, but "it take 3 to 4 attempts at short walks of 100-150 yards at a time with break in between either reclined or lay down." [Tr. 129.] The record also states that Keehner accompanies his wife "one time a week if that" shopping, and that "I just go to get out of house and for the exercise." [Tr. 129.] More than two years passed between the date Keehner filled out the Function Report and the hearing. At the hearing, Keehner's testimony regarding shopping was that, "I go and usually sit in the car while she goes in." [Tr. at 33.] Keehner did not state in what position he sits in the car while waiting for his wife. Again, the "inconsistency" which the ALJ claims "speaks for itself" is not apparent to this Court. [Tr. 13.]

### 3. Whether the ALJ Failed to Provide an Appropriate RFC

Because there is not evidence in the record as a whole to support the ALJ's RFC, the Court finds that a reversal is required.

## C. Fees and Costs

Plaintiff Keehner also requests costs and reasonable attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d). Section 2412(d) provides that "a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

Here, given that the Court is reversing the ALJ's decision and directing the Commission to award benefits, Plaintiff Keehner is the prevailing party. However, to obtain an award of fees and other expenses, Keehner must follow the procedure laid out in Section 2412(d):

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record . . . .

28 U.S.C. § 2412(d)(1)(B). Since the Court does not have before it the proper application, including an itemized statement of fees, such an award would be premature. Hopefully, the parties can work out the issue of attorney fees voluntarily.

## III. Conclusion

Accordingly, it is hereby ORDERED that the decision of the Commissioner is REVERSED and the Commission is directed to award benefits. The Plaintiff Keehner is the prevailing party for purposes of attorney fees.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: March 7, 2011
Jefferson City, Missouri